United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Walter Jamil and Eugene Thomas,   Case No. 08-70828-R
        Debtors.   Chapter 11
_____/

Computer Business World,
        Plaintiff,

v.   Adv. No. 09-4419

Walter Jamil,
        Defendant.
_____/

Computer Business World,
        Plaintiff,

v.   Adv. No. 09-4420

Eugene Thomas,
        Defendant.

_____/

Opinion Regarding Defendant Jamil's Motion to Dismiss; the Defendants'
Motions for a Protective Order; and the Plaintiff's Motions for Summary Judgment

I. Introduction

Walter Jamil and Eugene Thomas are brothers and business partners. They each filed Chapter 11 petitions on December 17, 2008. On February 27, 2009, the Court entered an order administratively consolidating their cases. Jamil and Thomas were the previous owners of American Eagle Warranty Corp., Times Square Inc., CBW Enterprises, Inc., CBW Technologies, Inc. and SCD

Enterprises (collectively referred to as the "CBW Entities"). On June 26, 2006, the CBW Entities entered into an asset purchase agreement ("APA") with Computer Business World, Inc. ("CBW"). Under the APA, CBW agreed to purchase substantially all of the assets of the CBW Entities for $2,000,000 at closing, a $700,000 promissory note, and the assumption of $1,371,237.85 in debt. The parties also agreed to a post-closing adjustment of the working capital. The closing was held on July 5, 2006. Following the closing, JR Breslin and Sam Shabander completed the post-closing adjustment to working capital, which reflected a significant reduction in working capital. Jamil and Thomas disputed this and refused to work for CBW for the agreed upon one-year period after closing.

On March 17, 2007, Plante & Moran issued a written decision regarding the post-closing adjustment to working capital, concluding that the working capital should be adjusted downward by $400,117, and additionally by $277,421 if CBW properly identifies the over 180-day inventory and delivers it to the CBW Entities.

Prior to the sale, the CBW Entities purchased computer parts from Advanced Metro Devices ("AMD") and Intel. Both AMD and Intel had a marketing development fund program in which they reimbursed purchasers for advertising expenses. The CBW Entities engaged in a practice of fabricating advertising and invoices for the purpose of seeking reimbursement from AMD and Intel. The reimbursements were reported as rebates in the cost of goods sold, rather than advertising expenses, in the financial statements of the CBW Entities. CBW's owner, Dr. Daneshgari, discovered and ceased this practice nine months after purchasing the CBW Entities.

Also prior to the sale, the CBW Entities annually sold in excess of $2,000,000 in parts to Viva Computers. This allowed the CBW Entities to purchase parts from AMD and Intel at discounted prices. However, AMD and Intel terminated the discounted pricing program with the CBW Entities when they learned that the CBW Entities had been selling parts to foreign countries in violation of

2

the policies of AMD and Intel. This adversely affected CBW's profitability.

In September 2007, CBW's business failed and LaSalle Bank filed suit against CBW and Dr. Daneshgari to collect $1,494,475.78 in debt.

In 2008, CBW and Dr. Daneshgari arbitrated their claims against Jamil and Thomas for fraud in the inducement and breach of contract. The arbitrator found in favor of CBW and Dr. Daneshgari and awarded them $2,800,000 in damages. (*See* Ex. 1 to Complaint, Opinion of Arbitrator.)

On November 12, 2008, a judgment confirming the arbitration award was entered in Oakland County Circuit Court. Jamil and Thomas filed a motion for reconsideration, which was denied. They then filed an appeal, which is currently pending.

On December 17, 2008, Jamil and Thomas filed their chapter 11 petitions. The last day to file objections to discharge or for determinations of dischargeability of debt was set for March 13, 2009. On March 13, 2009, CBW filed these adversary proceedings. However, both complaints listed the debtor and defendant as Eugene Thomas, instead of one naming Walter Jamil.

On March 16, 2009, the clerk's office notified the attorney for CBW of the name discrepancy. On that same day, CBW filed an amended complaint properly identifying Walter Jamil as the debtor and defendant on adversary complaint number 09-4419.

Jamil has filed a motion to dismiss the adversary complaint against him as untimely.

In Count I of the complaint, CBW alleges that the debt is nondischargeable under § 523(a)(2)(A) because Jamil and Thomas made false representations to induce CBW to purchase the assets of the CBW Entities.

In Count II, CBW alleges that the debt is nondischargeable under § 523(a)(2)(B) because Jamil and Thomas used a false statement in writing regarding their financial condition in order to induce CBW to purchase the assets of the CBW Entities.

3

In Count III, CBW alleges that the debt is nondischargeable under § 523(a)(6) because Jamil and Thomas willfully and maliciously concealed information from CBW regarding the CBW Entities' financial condition with the intent to injure CBW.

In Counts IV-VII, CBW objects to the debtors' discharges under §§ 727(a)(2)(A) and (B), (a)(3), (a)(4), and (a)(5).

CBW has filed a motion for summary judgment as to Counts I, II, and III in each case.

On April 20, 2009, CBW served a subpoena on Mark Wagner, the accountant for the defendants. The subpoena requested that Wagner turn over all state and federal tax returns for the period January 1, 2002 to the present for both defendants and their wives, TBI Properties, LLC, and SAM Systems, Inc. It also requested turnover of any state and federal returns for any corporations in which the debtors and their wives had an interest. Jamil and Thomas have each filed a motion for a protective order regarding this subpoena.

On June 8, 2009, the Court conducted hearings on Jamil's motion to dismiss, Jamil and Thomas's motions for protective order and CBW's motions for summary judgment. The Court took the matters under advisement.

## II. Jamil's Motion to Dismiss

Jamil contends that the complaint filed against him was untimely because the deadline for filing such complaints was March 13, 2009, and the complaint, properly identifying him as the defendant, was not filed until March 16, 2009.

In response, CBW asserts that because of a clerical error, the incorrect complaint was

4

uploaded in ECF when it filed its complaint against Jamil.[1]  However, CBW argues that Jamil's attorney received electronic notice of the complaint, showing Jamil as the defendant, on March 13, 2009. CBW relies on Fed. R. Civ. P. 15(c)(1)(C) to argue that its amended complaint should relate back to the filing date of the original complaint.

In order for an amendment to relate back to the date of the original complaint, four requirements must be met: (1) the claim asserted in the amended pleading must arise out of the same conduct, transaction or occurrence set forth in the original pleading; (2) the party brought in by the amendment received notice of the institution of the action so the party is not prejudiced in maintaining a defense on the merits; (3) the party brought in by the amendment knew or should have known that, but for a mistake concerning the identity of the proper party the action would have been brought against the party; and (4) elements (2) and (3) must occur within the period provided by Rule 4(m) for service of the summons and complaint (within 120 days from the date of the filing of the complaint). *See* Fed. R. Civ. P. 15(c)(1)(C); *Lovelace v. O'Hara,* 985 F.2d 847, 849-850 (6th Cir. 1993); *Official Comm. Of Unsecured Creditors v. Four-O-Fluid Power Sales, Inc.* (*In re Hupp Indus., Inc.*), 165 B.R. 836 (Bankr. N.D. Ohio 1994).

The claims asserted in both complaints are identical. Jamil received notice of the complaint by way of the Notice of Electronic Case Filing that was timely served on Jamil's counsel. (See Ex. 5 to Pl's Answer to M. to Dismiss). This notice properly identified Jamil as the defendant. Therefore, he knew, or should have known, that the action would have been brought against him but for CBW's mistake.

---

1. The Court notes that this issue could have easily been avoided had counsel for the plaintiff followed the recommended procedure of looking into ECF immediately after the complaint was filed to determine that the correct pleading was filed.

Accordingly, the Court concludes that the March 16, 2009 amendment relates back and thus the complaint was timely filed. Jamil's motion to dismiss is therefore denied.

III. The Plaintiff's Motions for Summary Judgment

CBW relies upon the doctrine of collateral estoppel in support of its motions for summary judgment as to Counts I, II and III. CBW asserts that its judgment against the debtors is based upon the arbitrator's finding of fraud. CBW further contends that the arbitrator's findings of the debtors' fraudulent acts meets the definition of a willful and malicious injury under § 523(a)(6).

The debtors argue that collateral estoppel cannot be applied because the state court matter is currently on appeal and, therefore, the matter has not been fully adjudicated.

The debtors also argue that collateral estoppel does not apply because the arbitrator did not make any findings regarding the debtors' fraudulent intent. Further, the debtors contend that the arbitration award does not support a finding that the debtors intended to injure CBW.

It is well established that even if the merits of a lower court's decision are on appeal, the factual findings of that court have collateral estoppel effect, subject to the possible reversal of the decision. *See, e.g., SSIH Equipment S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 370 (Fed. Cir. 1983); *A. F. Pylant, Inc. v. Republic Creosoting Co.*, 285 F.2d 840, 841 (5th Cir. 1961). *See also City of Troy Bldg. Inspector v. Hershberger,* 183 N.W.2d 430, 433 (Mich. App. 1970). Accordingly, the Court rejects the argument that collateral estoppel cannot be applied because the state court matter is currently on appeal.

The doctrine of collateral estoppel can be applied by a bankruptcy court to avoid relitigating any grounds for nondischargeability which were previously litigated in a prior proceeding. *Spilman*

*v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981). The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires the bankruptcy court to apply the preclusion law of the state in which the judgment was rendered to determine its preclusive effect. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327 (1985). *See also Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 317 (6th Cir. 1997); *Cresap v. Waldorf* (*In re Waldorf*), 206 B.R. 858, 862 (Bankr. E.D. Mich. 1997). If the state court judgment would receive preclusive effect in the state where it was rendered, the bankruptcy court must give that judgment preclusive effect unless it determines that an exception to § 1738 should apply. *Marrese*, 470 U.S. at 386. The Sixth Circuit has held that no such exception exists under the circumstances of a default judgment. *Calvert*, 105 F.3d at 322; *Rally Hill Prods., Inc. v. Bursack* (*In re Bursack*), 65 F.3d 51, 54 (6th Cir. 1995).

Under Michigan law, collateral estoppel precludes the relitigation of an issue in a subsequent, different action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was actually litigated and necessarily determined. *People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990).

An issue is "actually litigated" if it is "put into issue by the pleadings, submitted to the trier of fact for determination, and is thereafter determined." *Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618, 627 (Mich. App.1986). An issue may be actually litigated without a trial. *Id.* at 627 (claim was "actually litigated" for collateral estoppel purposes when trial court dismissed it on motion for directed verdict at close of claimant's opening statement).

In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor

7

intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *See Longo v. McLaren* (*In re McLaren*), 3 F.3d 958, 961 (6th Cir. 1993).

In the arbitration proceeding, CBW alleged fraud in the inducement and breach of contract against the defendants. "Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Samuel D. Begola Servs., Inc v. Wild Brothers*, 534 N.W.2d 217, 219 (Mich. App. 1995). Following 13 days of hearings, the arbitrator issued his opinion in which he concluded the following:

> Based on the evidence, I find that the Respondents had a legal duty to disclose the practice of fabricating advertisements and invoices for AMD and Intel, as well as the fact that they were purchasing a high volume of parts from Intel and AMD at discounted prices and selling them through improper market channels. I also find that Respondents failed to disclose these facts in order to induce reliance by Claimants, that the non-disclosure was misleading, that Respondents knew that the non-disclosure was misleading, that Claimants acted in reliance on the misrepresentation created by Respondents in purchasing CBW Entities, and that Claimants were damaged as a result of Respondents' failure to disclose.

(*See* Ex. 1 to Complaint, Opinion and Award of Arbitrator at 4.)

The arbitrator determined all of the necessary elements under § 523(a)(2)(A). Accordingly, the Court concludes that the debt of each debtor to the plaintiff is nondischargeable under § 523(a)(2)(A).

The remaining counts under § 523(a)(2)(B) and § 523(a)(6) are dismissed as moot.

In light of the summary judgments granted herein, the defendants' motions for protective order are also moot and will not be addressed.

For Publication

8

09-04420-pjs    Doc 24    Filed 08/05/09    Entered 08/05/09 16:28:06    Page 8 of 9

**Signed on August 05, 2009**

                                                                **/s/ Steven Rhodes**
                                                                **Steven Rhodes**
                                                                **United States Bankruptcy Judge**